RECEIVED IN PRO SE OFFICE

MAR 05 2026

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

**CV 26-01279**

JOHN PIERRE-LOUIS,

Plaintiff,

-against-

DAVID PAUL STEINER
In His Official Capacity as Postmaster General of
United States Postal Service,
Federal Agency
**AMERICAN POSTAL WORKERS UNION, AFL-CIO,
AND
AMERICAN POSTAL WORKERS UNION, AFL-CIO,
QUEENS AREA LOCAL 1022,**

Defendants

Case No. _____

Jury Trial:  ☑ Yes  ☐ No

**GUJARATI, J.**

**MERKL, M.J.**

# COMPLAINT

## (Hybrid Action Under 39 U.S.C. § 1208(b))

Plaintiff John Pierre-Louis ("Plaintiff"), pro se, alleges as follows:

---

# I. NATURE OF THE ACTION

1. This is a Hybrid action under 39 U.S.C. § 1208(b) arising from discipline imposed by

the United States Postal Service ("USPS") against Plaintiff John Pierre-Louis and the

failure of the American Postal Workers Union ("APWU") and APWU Queens Area

REC'D IN PRO SE OFFICE
MAR 5 '26 AM10:58

Local 1022 to fulfill their duty of fair representation by properly pursuing Plaintiff's grievances through the contractual grievance-arbitration process.

2. On September 5, 2025, USPS management at the International Service Center at John F. Kennedy Airport ("ISC-JFK") placed Plaintiff on Emergency Placement in Off-Duty Status, removed him from the workplace, and had him escorted out of the facility by United States Postal Service Postal Police officers, resulting in several days of unpaid suspension and reputational harm.

3. Plaintiff filed multiple grievances under the APWU-USPS Collective Bargaining Agreement ("CBA") challenging the discipline and related management conduct. Several of those grievances progressed through the contractual grievance procedure and were denied at Step 2, making them eligible for appeal to arbitration.

4. Despite the grievances qualifying for arbitration, APWU and Local 1022 failed to invoke arbitration within the contractual time limits, failed to provide Plaintiff with arbitration case numbers or proof of filing, and failed to inform Plaintiff in writing that arbitration would not be pursued. As a result, Plaintiff's contractual claims were effectively extinguished.

5. Plaintiff alleges that USPS breached the CBA by imposing discipline without just cause and that APWU and Local 1022 breached their duty of fair representation through arbitrary, discriminatory, and bad-faith conduct, including hostile and racially derogatory behavior by a union official during the course of representational activity.

6. Because the union's conduct undermined and effectively nullified the grievance-arbitration process, Plaintiff brings this hybrid action seeking relief against both the employer and the union.

# II. JURISDICTION AND VENUE

7. This is a hybrid action under **39 U.S.C. § 1208(b)** (Postal Reorganization Act), the statutory analogue to LMRA § 301, arising from (a) breach of the APWU–USPS collective bargaining agreement ("CBA") by USPS and (b) breach of the duty of fair representation ("DFR") by APWU and APWU Local 1022.

8. This Court has federal question jurisdiction under **28 U.S.C. § 1331** and **39 U.S.C. § 1208(b)**.

9. Venue is proper under **28 U.S.C. § 1391(b)** because a substantial part of the events and omissions giving rise to the claims occurred in **Queens County, New York**, within the **Eastern District of New York**, including at USPS ISC-JFK.

# III. PARTIES

10. Plaintiff John Pierre-Louis is a USPS bargaining-unit employee and resident of Queens County, New York.

11. Defendant **David Paul Steiner** is the Postmaster General of the United States Postal Service and is sued in his official capacity.

12. Defendant **American Postal Workers Union, AFL-CIO ("National APWU")** is a labor organization representing USPS employees nationwide and is a party to the APWU–USPS National Agreement.

13. Defendant **APWU, AFL-CIO, Queens Area Local 1022 ("Local 1022")** is an affiliated local labor organization responsible for representing APWU members at USPS ISC-JFK and other covered facilities in Queens.

# IV. THE COLLECTIVE BARGAINING AGREEMENT AND THE GRIEVANCE– ARBITRATION SYSTEM

14. Plaintiff's employment terms and conditions are governed by the APWU–USPS CBA, including **Article 15 (Grievance-Arbitration Procedure), Article 16 (Discipline Procedure),** and **Article 17 (Representation).**

15. Under Article 15, grievances denied at Step 2 are eligible for appeal to arbitration within a contractual time limit (Plaintiff understands the union has **14 days** from Step 2 decision/receipt to timely invoke arbitration).

16. Under federal labor law applicable to USPS via § 1208(b), the union owes bargaining-unit employees a DFR requiring representation that is not **arbitrary, discriminatory, or in bad faith.**

# V. FACTUAL ALLEGATIONS

## A. Workplace, Key USPS Officials, and Key Union Officials

17. Plaintiff worked at the **USPS International Service Center at JFK Airport ("ISC-JFK")**, Queens, New York.

18. Relevant USPS management personnel included:

a. **SDO/AMDO Shavonea Arrington** (Supervisor Distribution Operations / Acting MDO);

b. **MDO Hallam Dyal** (Tour 2 MDO);

c. **Lead MDO Jacob Vanish;**

d. **MDO Frank Sottile/Sitilli** (as referenced in grievance materials); and

e. **Plant Manager Charles Conti.**

19. Relevant union officials included:

a. **Brian Porter** (Local 1022 official/shop steward);

b. **Chun Leung** (Local 1022 Administrative Vice President and shop steward);

c. **Dennis Nieves** (Local 1022 shop steward);

d. **George Sinacore** (Local 1022 representative listed on Step-2 forms); and

e. **Ronald Suslak** (Local 1022 President).

## B. Emergency Placement and Discipline Imposed by USPS

20. On **September 5, 2025**, USPS, through **SDO Shavonea Arrington**, issued Plaintiff a **Notification of Emergency Placement in an Off-Duty Status** under Article 16.7, effective immediately.

21. The Emergency Placement notice stated that during a discussion involving Plaintiff and his union representative **"C. Leung"** (Chun Leung) about policies on photos/videos on the workroom floor, Plaintiff allegedly engaged in a verbal confrontation and allegedly stated, **"I think I have power."**

22. Contrary to what is stated in the Emergency Placement notice, during and shortly after the 9/5/25 meeting with Supervisor Arrington and APWU Local Union Official/Shop Steward Mr. Chun Leung, Ms. Arrington stated that the reason why Plaintiff was being sent home was because of the statement that Plaintiff made that Ms. Arrington used her relationship with Tour 2 MDO Mr. Hallam Dyal to target people that she did not like.

23. Shortly after that 9/5/25 meeting, Ms. Arrington came to Plaintiff's work area and repeated to Plaintiff that he was being sent home because of that foregoing statement that he made about her relationship with MDO Dyal.

24. Initially Ms. Arrington showed no signs that she was going to issue any discipline to Plaintiff but after Mr. Leung urged her/strongly suggested to her to discipline Plaintiff, Ms. Arrington opened up a Letter of Warning Template on the computer behind her in her office but subsequently sent Plaintiff home followed by the Emergency Placement that culminated to the Letter of Warning.

25. Mr. Leung's statements to Ms. Arrington during that 9/5/25 meeting were, "He can be disciplined for this, right!" followed by "He can be written up for this, right!"

26. Plaintiff denies the truthfulness of the Emergency Placement's key accusations and alleges the notice contained **false and/or exaggerated allegations** used to justify the emergency removal.

27. Plaintiff was **kept off duty without pay for three days**, specifically **9/5/25, 9/6/25, and 9/7/25**, and remained on Emergency Placement status until return-to-duty.

28. USPS issued a **Return to Duty Notification** directing Plaintiff to return to duty on **September 10, 2025 at 0700 hours.**

29. On **September 25, 2025**, USPS issued Plaintiff an **Official Disciplinary Letter of Warning** signed by **SDO Shavonea Arrington** charging **"Failure to Follow Instructions – Unauthorized Cell Phone Use on Workroom Floor."**

30. The Letter of Warning asserted that on **September 5, 2025** Plaintiff was observed using a personal cell phone at approximately **8:30 a.m.,** and that Plaintiff had been informed that cell phone use was prohibited absent authorization.

31. The Letter of Warning further stated that a **Pre-Disciplinary Interview ("PDI")** occurred on **September 18, 2025,** "in the presence of APWU Shop Steward **Dennis Nieves."**

32. Plaintiff alleges that, during the 9/18/25 PDI, Steward **Nieves** provided **defective representation** by failing to advocate, question management's narrative, request leniency, or otherwise represent Plaintiff in a meaningful way.

33. Plaintiff alleges that this discipline was not supported by just cause under Article 16 and was imposed and sustained through a grievance process that the union failed to prosecute in good faith.

## C. Escort by Postal Police on September 5, 2025

34. After issuing the September 5, 2025 Emergency Placement notice, USPS management directed that Plaintiff immediately leave the facility.

35. Two armed United States Postal Service Postal Police Officers were summoned and escorted Plaintiff out of the USPS International Service Center (ISC-JFK) building.

36. The escort occurred in the presence of USPS management personnel and other employees.

37. Plaintiff was not accused of any criminal conduct, was not under arrest, and did not pose a safety threat to anyone in the facility.

38. Nevertheless, USPS management required that Plaintiff be escorted from the building by armed Postal Police officers.

39. Plaintiff is an African-American employee and experienced the escort as intimidating and humiliating

40. .Being escorted out of the workplace by armed officers caused Plaintiff significant stress and emotional distress, including concern for his physical safety during the encounter.

41. Plaintiff reasonably feared that the situation could escalate or result in physical harm, particularly given the involvement of armed law-enforcement personnel.

42. The manner in which USPS management conducted the removal amplified the humiliation and psychological impact of the Emergency Placement.

43. Plaintiff alleges that this treatment was disproportionate to the alleged workplace conduct and contributed to the harm he suffered as a result of USPS's actions.

44. The use of armed Postal Police to remove Plaintiff from the facility reinforced the seriousness of the disciplinary action and contributed to the reputational and emotional harm suffered by Plaintiff.

# D. Step-2 Grievances Denied and Not Appealed to Arbitration

45. Plaintiff pursued multiple grievances through Article 15, including at least the following **three Step-2 grievances, all of which were eligible for arbitration and all of which were not appealed to arbitration** by APWU/Local 1022.

## (1) Step-2 Grievance No. 25-09-0741 (Representation)

46. Plaintiff received a Step-2 denial for grievance **Log No. 25-09-0741** on **November 14, 2025.**

47. This grievance concerned denial of representation/Weingarten-type rights and related matters under **Article 17**, including allegations that Plaintiff requested a shop steward and was denied.

48. Plaintiff alleges that, despite the grievance being denied at Step-2 and eligible for arbitration, Local 1022 and/or National APWU **did not invoke arbitration within the 14-day contractual deadline**, and did not provide Plaintiff any arbitration case number or proof of filing.

## (2) Step-2 Grievance No. 25-10-0749 (Disparate Treatment)

49. Plaintiff received a Step-2 denial for grievance **Log No. 25-10-0749** on **November 22, 2025.**

50. This grievance alleged disparate treatment/discipline enforcement issues, including that Plaintiff was disciplined for conduct that other employees engaged in without discipline.

51. Plaintiff alleges that Local 1022 and/or National APWU **did not invoke arbitration** for Log No. 25-10-0749 within the contractual deadline and provided **no written notice** to Plaintiff that arbitration would not be pursued.

### (3) Step-2 Grievance No. 25-10-0753 (Discrimination)

52. Plaintiff received a Step-2 denial for grievance **Log No. 25-10-0753** on **November 28, 2025.**

53. This grievance alleged discriminatory treatment in discipline/enforcement compared to a coworker of a different race who allegedly engaged in similar conduct without adverse action.

54. Plaintiff alleges Local 1022 and/or National APWU **did not invoke arbitration** for Log No. 25-10-0753 within the contractual deadline and provided no arbitration case number, proof of filing, or USPS acknowledgment.

### Failure to Provide Arbitration Filings or Case Numbers

55. For each of the three grievances above (25-09-0741, 25-10-0749, 25-10-0753):

a. the union did not timely appeal to arbitration;

b. the union did not notify Plaintiff that arbitration had been invoked;

c. the union did not provide arbitration case numbers; and

d. the union did not provide proof of USPS acknowledgment or service.

56. Plaintiff alleges that the union's failure to invoke arbitration for these Step-2 grievances **caused the grievances to die procedurally,** allowing USPS's discipline and related contractual violations to stand.

# D. Additional Specific Union Misconduct Showing Arbitrary/Bad-Faith Representation

57. Plaintiff alleges that Local 1022 officials repeatedly mishandled, altered, refused, or undermined grievances and representation in a manner reflecting arbitrariness and bad faith, including:

58. **Brian Porter**: At or around September 2025, Porter handled grievance activity connected to Plaintiff's discipline but, according to Plaintiff, failed to coordinate with Plaintiff to accurately present Plaintiff's grievance theory and failed to confront key false allegations contained in the Emergency Placement notice and disciplinary narrative.

59. **Chun Leung**: Leung was identified in the Emergency Placement notice as Plaintiff's union representative present during the 9/5/25 incident. Plaintiff alleges that Leung failed to challenge the Emergency Placement's false allegations and later refused to process at least one grievance Plaintiff presented for processing (including the grievance regarding an unpublished special mail detail involving Simmons/Brown/Whitfield, as described in Plaintiff's prior submissions).

60. Racially Hostile Conduct by APWU Official Chun Leung

# E. Additional Facts Demonstrating Arbitrary and Hostile Representation

61. On January 16, 2026, Plaintiff met with APWU Local 1022 Administrative Vice President and Shop Steward Chun Leung inside the APWU union office at USPS ISC-JFK during official union business.

62. During that meeting Plaintiff provided Mr. Leung a written complaint concerning workplace integrity issues involving SDO/AMDO Shavonea Arrington's use of blank Service Talk sheets, which Plaintiff believed could be misused for backdated documentation of service talks.

63. Mr. Leung read Plaintiff's written complaint in Plaintiff's presence.

64. After reviewing the document, Mr. Leung responded toward Plaintiff with a racially offensive remark stating:

65. "The words glow in the dark — you glow in the dark.

66. Mr. Leung's statement was unrelated to the substance of Plaintiff's complaint and instead introduced racial hostility into what should have been a neutral representational interaction between a union official and a bargaining-unit member seeking union assistance.

67. Plaintiff reasonably perceived the statement as a racially derogatory reference directed toward him as a Black employee.

68. This incident further undermined Plaintiff's confidence that Mr. Leung could represent him fairly or without hostility.

69. Context Demonstrating Pattern of Hostile Representation

70. Mr. Leung's January 16, 2026 remark must also be viewed in context of prior interactions between Mr. Leung and Plaintiff.

51. During the September 5, 2025 Emergency Placement meeting, Mr. Leung was present as Plaintiff's union representative yet aligned with USPS management officials rather than advocating on Plaintiff's behalf.

52. During that meeting Plaintiff attempted to document conduct by management that he believed to be threatening.

53. Instead of assisting Plaintiff in documenting the incident, Mr. Leung discouraged Plaintiff's efforts and failed to challenge management's accusations.

54. Plaintiff has also observed that Mr. Leung appeared to treat non-Black employees more favorably in union interactions compared with Plaintiff.

55. Taken together, the January 16, 2026 racially hostile remark and the earlier representational conduct reinforced Plaintiff's belief that Mr. Leung's representation was hostile, discriminatory, and inconsistent with the duty of fair representation.

56. **George Sinacore:** Sinacore appears as union representative on Step-2 documents in Plaintiff's grievance set, yet the union did not invoke arbitration on the Step-2 denials received 11/14/25, 11/22/25, and 11/28/25.

57. **Dennis Nieves:** Nieves is listed as the shop steward present at Plaintiff's 9/18/25 PDI in the Letter of Warning. Plaintiff alleges Nieves provided defective representation by remaining silent and failing to advocate.

58. Plaintiff alleges that Local 1022 further refused to enforce at least one grievance settlement (including a cross-craft-related settlement) after USPS allegedly breached that settlement, and refused to take enforcement action through the contractual process.

79. Plaintiff further alleges that Local 1022 materially altered at least one grievance (the "placard detail" grievance), reframing the issue in a manner that undermined or eliminated arbitrability, without Plaintiff's informed consent.

## CBA Provisions Violated by USPS

## Contractual Violations Under the APWU–USPS Collective Bargaining Agreement

80. Plaintiff's grievances challenged conduct by USPS management that violated multiple provisions of the APWU–USPS Collective Bargaining Agreement ("CBA"), including but not limited to Articles 2, 5, 15, 16, and 17.

81. Article 16 (Discipline Procedure) requires that discipline be imposed only for just cause and that disciplinary actions be fairly and consistently administered.

82. Plaintiff's grievance Log No. 25-10-0749 challenged discipline imposed by USPS management arising from the September 5, 2025 incident and related Letter of Warning issued September 25, 2025.

83. Plaintiff alleged that the discipline violated Article 16 because it was imposed without just cause and was applied in a disparate and inconsistent manner compared to other employees who engaged in similar conduct but were not disciplined.

84. Article 17 (Representation Rights) provides that employees are entitled to union representation during investigatory interviews that the employee reasonably believes may lead to discipline.

85. Plaintiff's grievance Log No. 25-09-0741 alleged that USPS violated Article 17 by denying Plaintiff meaningful representation during meetings with management related to the September 2025 investigation and disciplinary process.

86. Plaintiff reasonably believed the meetings could lead to discipline and requested representation, yet management proceeded in a manner that Plaintiff contends did not comply with Article 17 protections.

87. Article 2 (Non-Discrimination) of the CBA prohibits discrimination and requires that employees be treated fairly and without unlawful discrimination.

88. Plaintiff's grievance Log No. 25-10-0753 alleged that USPS management engaged in

89. discriminatory and disparate disciplinary treatment compared to employees of a different race who engaged in similar workplace conduct but were not disciplined.

90. Each of the above grievances proceeded through the contractual grievance procedure and was denied at Step 2, making the grievances eligible for appeal to arbitration under Article 15 of the CBA.

91. Because APWU and Local 1022 failed to invoke arbitration for these grievances within the contractual deadline, Plaintiff was deprived of the final and binding arbitration process guaranteed by the CBA.

## F. Accrual and Timeliness

92. Plaintiff alleges that he exercised diligence to determine whether arbitration had been filed and repeatedly sought copies of arbitration filings or case numbers.

93. As of **February 26, 2026**, Local 1022 official **Brian Porter** represented to Plaintiff that he had permission from Local President **Ronald Suslak** to provide Plaintiff copies of arbitration filings, but no such copies were provided on February 27 or February 28, 2026.

94. Plaintiff alleges that, at the latest, Plaintiff knew or should have known no arbitration had been invoked when the contractual deadlines expired without filings and the union continued to provide no proof of arbitration, including after the February 26, 2026 representation.

95. This action is timely under the six-month limitations period applicable to hybrid claims because it is being filed on **March 4, 2026**, well within six months of the Step-2 receipt dates and arbitration-deadline expirations for the Step-2 denials received **11/14/25, 11/22/25, and 11/28/25.**

## Timeliness of Hybrid Claim

96. Hybrid claims alleging breach of a collective bargaining agreement and breach of the duty of fair representation are governed by the six-month statute of limitations established in DelCostello v. International Brotherhood of Teamsters.

97. The limitations period generally begins when the employee knew or reasonably should have known that the union would not pursue the grievance to arbitration.

98. Plaintiff pursued multiple grievances through the contractual grievance procedure under Article 15 of the APWU-USPS Collective Bargaining Agreement.

99. Plaintiff received Step-2 grievance denials on the following dates:

100. November 14, 2025 (Log No. 25-09-0741)

101. November 22, 2025 (Log No. 25-10-0749)

102. November 28, 2025 (Log No. 25-10-0753)

103. Under the CBA grievance procedure, grievances denied at Step 2 are eligible for appeal to arbitration within a limited contractual period, which Plaintiff understands to be fourteen (14) days from the Step-2 decision or receipt.

104. Despite the contractual availability of arbitration, APWU and Local 1022 did not invoke arbitration for any of the above grievances within the required time period.

105. Plaintiff repeatedly sought confirmation that arbitration had been filed and requested copies of arbitration filings or case numbers.

106. APWU and Local 1022 failed to provide Plaintiff with arbitration case numbers, copies of arbitration appeals, or written notice that arbitration would not be pursued.

107. On February 26, 2026, Local 1022 official Brian Porter approached Plaintiff and stated that he had authorization from Local President Ronald Suslak to provide Plaintiff copies of arbitration filings.

108. However, no arbitration filings were provided to Plaintiff on February 27, 2026, February 28, 2026, or thereafter.

109. Plaintiff reasonably concluded that arbitration had not been invoked and that the union had abandoned the grievances.

40. Plaintiff filed this action on March 4, 2026, which is well within six months of the Step-2 denials and the expiration of the contractual arbitration appeal deadlines.

41. Accordingly, Plaintiff's hybrid claims are timely under the six-month statute of limitations applicable to hybrid labor actions.

**Exhaustion of Contractual Remedies**

42. The APWU–USPS Collective Bargaining Agreement establishes a grievance-arbitration procedure under **Article 15** as the primary mechanism for resolving disputes concerning discipline and contract violations.

43. Plaintiff pursued his grievances through the contractual process, and several grievances progressed through **Step 2 of the grievance procedure**, including grievance numbers **25-09-0741, 25-10-0749, and 25-10-0753**, which were denied and therefore eligible for appeal to arbitration.

44. Because APWU and Local 1022 failed to invoke arbitration within the contractual deadline and failed to provide Plaintiff notice or proof that arbitration had been filed, further exhaustion of contractual remedies was rendered **impossible and futile**, thereby permitting Plaintiff to bring this hybrid action under **39 U.S.C. §1208(b)**.

# VI. CLAIMS FOR RELIEF

## COUNT I — Breach of Collective Bargaining Agreement

**(Against Steiner, Postmaster General, in Official Capacity)**

45. Plaintiff repeats and realleges paragraphs 1–46.

46. USPS breached the CBA, including but not limited to **Articles 15, 16, and 17**, by issuing and sustaining discipline without just cause and by failing to provide required representational protections in matters reasonably believed to be disciplinary.

47. USPS, through SDO **Shavonea Arrington**, issued an Emergency Placement notice under Article 16.7 based on allegations Plaintiff denies and contends were false and/or pretextual.

48. USPS, through SDO **Shavonea Arrington**, issued a Letter of Warning dated September 25, 2025, charging Plaintiff with failure to follow instructions based on the September 5, 2025 events and asserting a PDI with union steward present.

49. USPS's actions resulted in Plaintiff being removed from duty and losing pay and in discipline being placed in Plaintiff's record.

50. USPS's conduct caused Plaintiff damages, including lost wages (at least three days of unpaid suspension), lost benefits, and harm to his employment record.

# COUNT II — Breach of Duty of Fair Representation

**(Against National APWU and APWU Local 1022)**

51. Plaintiff repeats and realleges paragraphs 1–52.

52. National APWU and Local 1022 owed Plaintiff a duty of fair representation in the processing of grievances, including investigation, presentation, and timely appeals through arbitration.

123. National APWU and Local 1022 breached the DFR by acting in an arbitrary manner and/or in bad faith, including:

124. Failing to timely invoke arbitration for at least three Step-2 denials eligible for arbitration—Log Nos. **25-09-0741, 25-10-0749,** and **25-10-0753**—despite Plaintiff's continued requests for arbitration proof.

125. Failing to provide Plaintiff notice, case numbers, filing proofs, or USPS acknowledgments of arbitration invocation.

126. Providing defective representation during critical meetings, including the 9/18/25 PDI where Steward **Dennis Nieves** was present but, Plaintiff alleges, failed to advocate.

127. Refusing to process and/or materially altering grievances in ways that undermined arbitrability and deprived Plaintiff of the contract's protections.

128. The union's acts and omissions were not mere negligence; Plaintiff alleges they reflect systemic hostility, arbitrariness, and bad-faith alignment with management that undermined Plaintiff's ability to obtain contractual relief.

# COUNT III — Hybrid § 1208(b) Claim

**(Against All Defendants)**

129. Plaintiff repeats and realleges paragraphs 1–60.

130. USPS breached the CBA by imposing and sustaining discipline in violation of Articles 16 and 17 and by denying Plaintiff the protections of the grievance-arbitration system.

131. APWU and Local 1022 breached their DFR by failing to pursue arbitration for the Step-2 denials received **11/14/25, 11/22/25, and 11/28/25**, allowing those grievances to lapse and die procedurally.

132. The union's breach **seriously undermined the grievance-arbitration process,** and as a result USPS's contract violations went unremedied.

133. Plaintiff has been damaged by USPS's contract breaches and by the union's DFR breaches, including lost wages and ongoing harm from discipline in his record.

# VII. DAMAGES

134. Plaintiff seeks compensation for lost wages and benefits caused by the Emergency Placement unpaid days and other economic losses traceable to the discipline and to the union's failure to arbitrate.

135. Plaintiff seeks equitable relief including removal/expungement of the challenged discipline and related records.

# VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment:

A. Declaring that USPS breached the CBA;

B. Declaring that National APWU and Local 1022 breached the duty of fair representation;

C. Awarding back pay, lost benefits, and make-whole relief (including for the unpaid Emergency Placement days);

D. Ordering expungement/removal of the Emergency Placement and Letter of Warning (and related discipline) from Plaintiff's record;

E. Awarding costs and such other relief as the Court deems just and proper.

# IX. JURY DEMAND

136. Plaintiff demands a trial by jury on all issues so triable.

# X. EXHIBIT INDEX

**Exhibit A** — Emergency Placement Notice (9/5/25)

**Exhibit B** — Return to Duty Notice (9/5/25; return 9/10/25)

**Exhibit C** — Letter of Warning (9/25/25)

**Exhibit D** — Step-1 / Step-1A / Step-2 Summary Sheets showing grievance logs and denials for LOG. NOS :. 25-09-0741, 25-10-0749, 25-10-0753)

**Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**A. For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Dated: March 4th 2026

Respectfully submitted,

Signature of Plaintiff

**John Pierre-Louis**
**Pro Se Plaintiff**
215-03 Jamaica Avenue #105
Queens Village, New York 11428
Telephone: (973)922-0522
Email: jp1lw1@gmail.com

# JS-44 CIVIL COVER SHEET

## I. (a) PLAINTIFF

**John Pierre-Louis**
215-03 Jamaica Avenue #105
Queens Village, New York 11428
Telephone: (973)922-0522
Email: jp11w1@gmail.com

Pro Se Plaintiff

## DEFENDANTS

David Paul Steiner
In His Official Capacity as Postmaster General of
United States Postal Service,
FEDERAL AGENCY
American Postal Workers Union, AFL-CIO

American Postal Workers Union
Queens Area Local 1022

## I. (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF

Queens County, New York

## I. (c) ATTORNEYS (IF KNOWN)

Pro Se

# II. BASIS OF JURISDICTION

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☑ 3 Federal Question
☐ 4 Diversity

Specify Federal Statute:

39 U.S.C. §1208(b) - Hybrid Duty of Fair Representation /
Collective Bargaining Agreement claim

# III. CITIZENSHIP OF PRINCIPAL PARTIES

# IV. NATURE OF SUIT

Select:

☑ **710 – Labor: Fair Representation**

*(Hybrid Labor Actions.)*

# V. ORIGIN

☑ **1 – Original Proceeding**

# VI. CAUSE OF ACTION

Hybrid action under 39 U.S.C. §1208(b) alleging breach of the collective bargaining agreement by the United States Postal Service and breach of the duty of fair representation by the American Postal Workers Union and APWU Local 1022.

# VII. REQUESTED IN COMPLAINT

**Jury Demand**

☑ YES

**Complaint**

Class Action?

☑ NO

## Monetary Demand

Back pay, lost wages, benefits, and other compensatory relief.

# VIII. RELATED CASE(S)

Pierre-Louis v. Steiner
22-cv-05655 (DG)
United States District Court
Eastern District of New York
Hon. Diane Gujarati

# IX. DIVISION

☑ **Brooklyn**

# X. SIGNATURE

Date: March 4, 2026

Signature:

/s/ John Pierre-Louis
John Pierre-Louis
Plaintiff Pro Se

# SUMMONS

## Defendant: David Paul Steiner

**Postmaster General of the United States Postal Service**

**In His Official Capacity**

**Court:**
United States District Court
Eastern District of New York

**Plaintiff:**
John Pierre-Louis

**Defendant:**

```
David Paul Steiner
Postmaster General
United States Postal Service
In His Official Capacity
```

## To: (Defendant's name and address)

```
David Paul Steiner
Postmaster General In Your Official Capacity
475 L'Enfant Plaza SW
Washington, DC 20260
```

**A lawsuit has been filed against you as** Postmaster General In Your Official Capacity.

Within **21 days after service of this summons** on you (not counting the day you received it) — or **60 days if you are the United States or a United States agency** — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12.

**Plaintiff's Address**

```
John Pierre-Louis
215-03 Jamaica Avenue #105
Queens Village, New York 11428
Telephone: (973)922-0522
Email: jp1lw1@gmail.com
Plaintiff Pro Se
```

---

**Signature**

```
/s/ John Pierre-Louis
John Pierre-Louis
Plaintiff Pro Se
```

Date: March 4, 2026

# SUMMONS

## Defendant: American Postal Workers Union, AFL-CIO

**Court:**
United States District Court
Eastern District of New York

**Plaintiff:**
John Pierre-Louis

## Defendant

American Postal Workers Union, AFL-CIO

## To: (Defendant's name and address)

American Postal Workers Union, AFL-CIO
1300 L Street NW
Washington, DC 20005

## Plaintiff's Address

John Pierre-Louis
215-03 Jamaica Avenue #105
Queens Village, New York 11428
Telephone: (973)922-0522
Email: jp11w1@gmail.com
Plaintiff Pro Se

**Signature**



/s/ John Pierre-Louis
John Pierre-Louis
Plaintiff Pro Se

Date: March 4, 2026

# SUMMONS

## Defendant: APWU Queens Area Local 1022

**Court:**
United States District Court
Eastern District of New York

**Plaintiff:**
John Pierre-Louis

## Defendant

```
American Postal Workers Union
Queens Area Local 1022
```

## To: (Defendant's name and address)

Use the Local office address:

```
American Postal Workers Union
98-11 101st Ave
Ozone Park, New York 11416
```

*(Use the exact address listed on union records or your grievance documents.)*

## Plaintiff's Address

```
John Pierre-Louis
215-03 Jamaica Avenue #105
Queens Village, New York 11428
Telephone: (973)922-0522
Email: jp11w1@gmail.com
Plaintiff Pro Se
```

**Signature**

/s/ John Pierre-Louis
John Pierre-Louis
Plaintiff Pro Se

Date: March 4, 2026